UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA PIROZZI,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE, INC,<br><br>    Defendant. | Case No. 12-cv-01529-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Re: ECF No. 38 |

Before the Court is Defendant Apple, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint. Mot., ECF No. 38. The Court previously dismissed Plaintiff's First Amended Complaint with leave to amend. ECF No. 28; Pirozzi v. Apple, Inc., No. 12-cv-1529-YGR, 913 F. Supp. 2d 840 (N.D. Cal. Dec. 20, 2012) ("Pirozzi I"). The Court will deny Apple's motion on all grounds except with respect to Plaintiff's unjust enrichment claim, which the Court will dismiss.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff Maria Pirozzi filed this proposed class action on March 27, 2012, against Apple for failing to prevent third-party software applications distributed through its online App Store from uploading user information from Apple's mobile devices without permission. ECF No. 1. Following an amendment as of right, ECF No. 4, the Court dismissed Plaintiff's First Amended Complaint on December 20, 2012, without prejudice. ECF No. 28.

Plaintiff's operative Second Amended Complaint asserts five claims against Apple: (1) violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL"); (2) violation of False and Misleading Advertising Law ("FAL"), Cal. Bus. & Prof. Code

1 §17500, *et seq*. ("FAL"); (3) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ.
2 Code §1750, *et seq*. ("CLRA"); (4) negligent misrepresentation; and (5) unjust enrichment. ECF
3 No. 29 ("SAC"). Apple moves to dismiss on the grounds that Plaintiff lacks Article III standing,
4 lacks standing to bring a claim under California's consumer protection statutes, fails to satisfy the
5 particularity requirement of Rule 9(b), and fails to state a claim upon which relief can be granted.
6 ECF No. 38 ("Mot.").

   **B.   Factual Allegations**

8      The Court accepts the following allegations as true for the purpose of resolving this Rule
9 12(b)(6) motion. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).
10     Plaintiff alleges that Apple designs and manufactures three popular mobile devices:
11 iPhone, iPod touch, and iPad (collectively "Apple Devices"). Id. ¶¶ 26–28. Owners of Apple
12 Devices can customize their user experience by installing third-party software applications
13 ("Apps") through Apple's online App Store. Id. ¶¶ 33–45. Apps are integral to users' experiences
14 when operating Apple Devices. Id. ¶ 42. The App Store is the exclusive source from which
15 owners of Apple Devices can obtain Apps for their Apple Devices. Id. ¶ 37.
16     Apple completely controls users' experience from development of the Apple Devices to
17 development and selection of the Apps available at the App Store. Id. ¶¶ 46–50. Apple claims to
18 "review every app on the App Store based on a set of technical, content, and design criteria." Id. ¶
19 63. The App approval process "ensure[s] that applications are reliable, perform as expected, and
20 are free of explicit and offensive material." Id. The App Store Review Guidelines provide that
21 "Apps cannot transmit data about a user without obtaining the user's prior permission and
22 providing the user with access to information about how and where the data will be used." Id. "In
23 order to offer an application for download in the App Store, a third-party developer must be
24 registered as an 'Apple Developer' and agree to the iOS Developer Agreement (the 'IDA') [sic]
25 and the Program License Agreement (the 'PLA') with Apple as well as [a] $99 yearly registration
26 fee." Id. ¶ 48. Among other provisions, the PLA contractually requires developers to obtain user
27 consent before they collect any user or device data through their apps. Id. ¶ 60. Apple also
28 "provides third-party developers with review guidelines, and conducts a review of all applications

1  submitted for inclusion in the App Store for compliance with these documents." Id. ¶ 48. "The
2  App Store Review Guidelines set forth the technical, design, and content guidelines [that] Apple
3  [uses] when reviewing an app for inclusion in Apple's App Store." Id. ¶ 60.

Plaintiff characterizes Apple as the "gatekeeper" to the App Store. Id. ¶ 51. The Second Amended Complaint identifies multiple Apple statements (in addition to those set forth above) in support of that characterization. Id. ¶¶ 51–58. They include former Apple CEO Steve Jobs' proclamations from 2007 to 2010 that limitations exist on the types of apps that would be allowed on Apple Devices, including apps that invade user privacy. Id. ¶¶ 51–53, 55. They also include current Apple CEO Tim Cook's statement in April 2011 that he believes the "user appreciates that Apple can take full responsibility for their experience." Id. ¶ 57. In addition, Apple's website contained the following statement in September 2011:

> iOS 4 is highly secure from the moment you turn on your iPhone. *All apps run in a safe environment, so a website or app can't access data from other apps*. iOS 4 supports encrypted network communication to protect your sensitive information. Optional parental controls let you manage iTunes purchases, Internet browsing, and access to explicit material. *To guard your privacy, apps requesting location information must get your permission first.* You can set a passcode lock to prevent unauthorized access to your phone and configure iPhone to delete all your data after too many unsuccessful passcode attempts. And in the event your iPhone is lost or stolen, Find My iPhone allows you to locate it on a map, lock its screen, and remotely delete all your data. If you get it back, you can restore everything from your last backup.

Id. at 61 (emphasis added). Apple's Public Policy contains similar statements, claiming that "Apple takes precautions — including administrative, technical, and physical measures — to safeguard your personal information against loss, theft, and misuse, as well as against unauthorized access, disclosure, alteration, and destruction." Id. at 81. According to Plaintiff, Apple made these statements in order to "cultivate a perception that its products are safe and that Apple strives to protect users." Id. ¶ 58.[1]

Notwithstanding Apple's representations that it was protecting users' personal information

---

[1] Although Plaintiff alleges other Apple statements that support a perception of security, those statements were made after Plaintiff purchased an iPhone in September 2011 and therefore are not relevant. Id. ¶¶ 65. Absent class members may have purchased Apple Devices on a later date, but the specifics of those claims are not before the Court on this motion.

and the security of the iOS operating system, "Apple-approved apps have downloaded and/or copied users' private address book information (including names and contact information of users' contacts), location data, private photographs and videos without the users' knowledge or consent when a user agrees to allow an app to access the user's then current locations." Id. ¶ 66. "For example, in early February 2012, it was revealed that one such app, Path, was uploading data stored on users' Apple Devices (including address book and calendar) to its servers." Id. ¶ 69. "[O]ther popular apps such as Angry Birds, Cut-the-Rope, Twitter, Facebook, LinkedIn, Gowalla, Foodspotting, Instagram, Foursquare, Beluga, Yelp!, Hipster and Kik Messenger among others, have likewise downloaded users' data without their explicit consent in contrast to Apple's stated policy." Id. ¶ 70. And while "copying address book data, photos and videos without a user's consent is against Apple's rules . . . [, Apple has] failed to properly screen apps and allowed such apps to be sold in the App Store." Id. ¶ 73.

Plaintiff Pirozzi purchased an iPhone in September 2011. Id. ¶ 10. While owning the iPhone, Plaintiff has downloaded a number of apps from the App Store, including Facebook and Angry Birds. Id. Before purchasing her iPhone, Plaintiff visited Apple's website, viewed Apple's in-store advertisements, and was aware of Apple's reputation for safety. Id. Relying on those sources of information, "Plaintiff purchased her iPhone with the expectation that she [would] be able to download and utilize apps available through the App Store without compromising the safety of her personal and private information." Id. Plaintiff alleges that if she "knew that the apps would be able to potentially steal her private photos and contacts[,] she would not have downloaded the apps and would not have paid as much for the iPhone, or would not have purchased the iPhone." Id. ¶ 84.

## II. LEGAL STANDARD

On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To be entitled to

4

the presumption of truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. den'd, --- U.S. ----, 132 S.Ct. 2101 (2012).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 687. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In the Ninth Circuit, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." Starr, 652 F.3d at 1216 (original emphasis).

In addition, fraud claims are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The allegations must be specific enough to give a defendant notice of the particular misconduct alleged to constitute the fraud such that the defendant may defend against the charge. Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). In general, allegations sounding in fraud must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

**III.   ANALYSIS**

Apple moves to dismiss the Second Amended Complaint for lack of Article III standing, statutory standing, failure to plead fraud with particularity, and failure to state a claim upon which relief may be granted. The Court will address Apple's grounds for dismissal in that order.

### A. Article III Standing

Because Article III standing is a threshold jurisdictional question, the Court will first address Apple's Rule 12(b)(1) motion to dismiss on the grounds that Plaintiff lacks Article III standing. See Steel Co. v. Citizens for a Better Env., 523 U.S. 83, 94 (1998).

To establish Article III standing, plaintiffs must satisfy three elements: (1) "injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) causation — "there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) redressability — "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted).

Although she asserts her claims on behalf of a class, Plaintiff must show that she personally has suffered an injury, not just that other members of the proposed class suffered the injury. Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

Apple argues that Plaintiff fails adequately to allege that she suffered a "non-speculative injury," Mot. p. 7, or that any third-party App uploaded personal information from her mobile device. Judge Gonzalez Rogers already rejected the first argument. See Pirozzi I, 913 F. Supp. 2d at 847 ("Apple's arguments misconstrue the nature of Plaintiff's allegations . . . . Overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing."). Indeed, "palpable economic injuries have long been recognized as sufficient to lay the basis for standing." Sierra Club v. Morton, 405 U.S. 727, 733–34 (1972); see also Comm. v. Reno, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing."). Here, Plaintiff alleges that she was "misled as to the

6

nature and integrity of Apple's products." Pirozzi I, 913 F. Supp. 2d at 847 (internal quotation omitted). That is enough to satisfy Article III's injury-in-fact requirement. As for the second argument, the Second Amended Complaint does not allege that Plaintiff's information was ever uploaded from her mobile device; she has abandoned that theory of liability. See Opp., ECF No. 40 p. 9 n. 3 ("Plaintiff's SAC only states a misrepresentation claim.").

Though the Court previously rejected Apple's first argument concerning the injury-in-fact requirement, the Court dismissed the First Amended Complaint based on the causation requirement. In particular, "Plaintiff fail[ed] to allege specifically which statements she found material to her decision to purchase an Apple Device or App. Based on the failure to allege these facts, Plaintiff has not suffered an injury-in-fact that is caused by the complained of conduct." Pirozzi I, 913 F. Supp. 2d at 847. Plaintiff has now done that.

Plaintiff alleges that she bought her iPhone in September 2011 because she wanted a smartphone with apps.[2] SAC ¶ 84. Before purchasing her iPhone, Plaintiff "visited Apple's website as well as viewed Apple's in-store advertisements." Id. ¶ 10. The website stated: "iOS 4 is highly secure from the moment you turn on your iPhone. All apps run in a safe environment, so a website or app can't access data from other apps." Id. ¶ 61. Plaintiff also identifies statements that she saw and relied upon concerning her iPhone's safety and reliability in Apple's customer privacy policy. Id. ¶ 81. The causal connection between those statements and Plaintiff's alleged loss is clear: Apple claimed that apps could not access data from other apps, and, according to the Second Amended Complaint, in actuality, they can and have. Those allegations are enough to establish Article III standing. See Goodman v. HTC Am., Inc., C11-1793MJP, 2012 WL 2412070 (W.D. Wash. June 26, 2012) ("The crux of Plaintiffs' claimed overpayment injury is that 'Defendants' [smartphone] advertisements and packaging . . . contain inadequate disclosures' and

---

[2] Apple argues that Plaintiff cannot establish Article III standing because "'[s]he chose to upgrade from her Motorola Razor to the iPhone because she wanted a smartphone that had apps. The apps were an essential part of the device for Plaintiff Pirozzi.' But Plaintiff is not claiming that her iPhone did not 'have apps' or that Apple misstated the *availability* of apps in the App Store." Mot. p. 10 (Apple's emphasis) (quoting SAC ¶ 84). That argument parses the allegations too finely, and it ignores the remainder of paragraph 84, which states, in part: "If Plaintiff Pirozzi knew that the apps would be able to potentially steal her private photos and contacts she would not have downloaded the apps and would not have paid as much for the iPhone." SAC ¶ 84.

that these omissions 'affected Plaintiffs' and Class Members' decisions to purchase and willingness to pay a certain price' for the phones.").³

Finally, Plaintiff also alleges that she "relied on Apple's reputation for safety." Id. ¶ 10. That allegation, which stands alone, is inadequately pled. Although Plaintiff need not "demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement" in her statutory claims, In re Tobacco II Cases, 46 Cal. 4th at 327, one sentence asserting reliance on Apple's reputation does not sufficiently describe how Plaintiff learned of Apple's reputation for securing its App Store's apps, whether Apple was responsible for the creation of its reputation, whether the statements Plaintiff heard or saw can be connected to Apple's conduct, directly or indirectly, what precisely are the contours of Apple's reputation, or how that reputation, precisely defined, led to Plaintiff's injury. Though the Second Amended Complaint contains several allegations supporting the conclusion that Apple does, plausibly, have a reputation for safety that it itself cultivated in order to sell its devices, Plaintiff does not allege that she saw or heard, directly or indirectly, any statements supporting Apple's reputation, nor does she allege that she was aware of the character of Apple's reputation. The allegations concerning Apple's reputation are divorced entirely from the allegations of what statements Plaintiff saw or heard.

Moreover, the parties have not identified any authority that states, explicitly or implicitly, that a "reputation for safety" may, or may not, satisfy Article III standing requirements or the elements of Plaintiff's statutory claims. The Court therefore will not address whether claims of

---

³ Apple also argues for the first time in reply that "mere overpayment" without allegations of "something more than pure economic harm" is insufficient to satisfy Article III standing because Plaintiff's claims stem from insufficient performance or function of a product. Mot. p. 4. The Court does not address arguments raised for the first time in reply. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir.2007); Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir.1999) ("[A]n argument raised for the first time in a reply brief, . . . is not an argument that we may consider here.").

That Apple connects its new argument to a decision issued after it filed its opening brief is immaterial. While the decision in In re LinkedIn User Privacy Litig. was issued March 6, 2013, No. 12-cv-03088-EJD, 2013 WL 844291 (N.D. Cal. Mar. 6, 2013), Apple's argument is not novel. Indeed, the portion of the LinkedIn decision Apple relies on itself relied on decisions issued as early as 2009. See, e.g., Id. at *4 (citing Whitson v. Bumbo, No. 07-cv-05597-MHP, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009)).

this nature *could* proceed, as Plaintiff has not adequately stated a claim based on those statements in the first instance. Should Plaintiff seek to press such a claim in a future complaint, she would need to clearly allege, with particularity, the connection between Apple's conduct, its reputation, her reliance on the reputation, and injury. As it stands now, the Second Amended Complaint's allegations regarding Apple's reputation are too conclusory to address Plaintiff's "reputation for safety" theory of liability.

However, Plaintiff's primary misrepresentation theory satisfies Article III standing, as she has adequately pled specific misrepresentations upon which she relied, causing her economic injury. See, e.g., In re iPhone Application Litig., 844 F. Supp. 2d 1040, 1072 (N.D. Cal. 2012) (plaintiffs had Article III standing via overpayment theory based on Apple's alleged misrepresentations concerning whether iPhone collected geographic data). The Court therefore denies Apple's Rule 12(b)(1) motion to dismiss on the basis of Article III standing.

### B. Statutory Standing

"[T]o pursue either an individual or a representative claim under the California unfair competition law," a plaintiff "must have suffered an 'injury in fact' and 'lost money or property as a result of such unfair competition.' " Hall v. Time Inc., 158 Cal.App.4th 847, 849 (Ct. App. 2008). California courts have distinguished the UCL standing requirement as more stringent than the federal Article III standing requirement, noting that "[w]hereas a federal plaintiff's 'injury in fact' may be intangible and need not involve lost money or property, Proposition 64, in effect, added a requirement that a UCL plaintiff's 'injury in fact' specifically involves 'lost money or property.'" Troyk v. Farmers Grp., Inc., 171 Cal. App. 4th 1305, 1348, n. 31 (2009). Conversely, "[i]f a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact." Kwikset Corp. v. Super. Ct., 51 Cal. 4th 310, 325 (Cal. 2011).

The standing requirement is substantially similar in this context for Plaintiff's CLRA and FAL claims. Id., 51 Cal. 4th at 322 (a plaintiff must "establish a loss or deprivation of money or property sufficient to qualify as injury-in-fact" under the UCL and FAL); Meyre v. Sprint Spectrum L.P., 45 Cal. 4th at 646 ("in order to bring a CLRA action, not only must a consumer be

exposed to an unlawful practice, but some kind of damage must result.")

Apple argues that Plaintiff cannot satisfy the standing requirements for her statutory claims for the same reasons that she cannot establish Article III standing. The Court likewise rejects that argument for the same reasons. Plaintiff argues that she overpaid for her iPhone as a result of Apple's alleged misrepresentations. That is an allegation of economic injury synonymous with "lost money" sufficient to satisfy the standing requirements for the UCL, CLRA, and FAL claims. Kwikset, 51 Cal. 4th at 325.

### C. California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

California's Unfair Competition Law "prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" In re Pomona Valley Med. Group, 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200, *et seq.*). The UCL's coverage is "sweeping," and its standard for wrongful business conduct is "intentionally broad." In re First Alliance Mortg. Co., 471 F.3d 977, 995 (9th Cir. 2006). Each prong — fraudulent, unfair, and unlawful — is independently actionable. Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007); Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 185 (Cal. 1999).

Apple moves to dismiss Plaintiff's UCL claim for failure to allege the basis of her claim with particularity. The Court addresses in turn Plaintiff's claims under the fraudulent, unfair, and unlawful prongs of the UCL.

#### i. UCL 'Fraudulent' Prong

Fraud under the UCL requires different elements than common law fraud. See Boschma v. Home Loan Center, Inc., 198 Cal. App. 4th 230, 252 (Cal. 2011). "This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages." Id.

First, to plead fraud under the UCL, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Weidner, 780 F.2d at 731. Second, since the UCL requires that a plaintiff's economic injuries come "as a result of" the fraudulent conduct, Cal. Bus. & Prof. Code, § 17204, the plaintiff must

1  allege "a causal connection or reliance on the alleged misrepresentation." Hall 158 Cal. App. 4th
2  at 855. Therefore, UCL plaintiffs must point to a misrepresentation with particularity and plead
3  that the misrepresentation "was an immediate cause of the injury-producing conduct," but not
4  necessarily "the sole or even the predominant or decisive factor." In re Tobacco II Cases, 46 Cal.
5  4th 298, 326 (Cal. 2009). Plaintiffs proceeding under the fraudulent prong of the UCL must
6  ultimately produce "evidence showing a likelihood of confounding an appreciable number of
7  reasonably prudent purchasers exercising ordinary care." Clemens v. DaimlerChrysler Corp., 534
8  F.3d 1017, 1026 (9th Cir. 2008).

This Court previously found that Plaintiff failed to identify which statements she found material to her decision to purchase an Apple Device. Pirozzi I, 913 F. Supp. 2d at 850. Now, the Second Amended Complaint alleges that Plaintiff relied on Apple's website and in-store advertisements in making her decision to purchase an iPhone in September 2011. SAC ¶¶ 10, 84. Apple argues that none of those statements are sufficient under the UCL and that "Plaintiff still cannot point to a single statement by Apple that she considered material to any purchasing decision," even though Plaintiff was "ordered by this Court to do so." Mot. p. 9.

While Plaintiff has not identified a particular advertisement or statement she saw in-store, and thus her individual claim cannot stand on 'in-store advertisements,' as discussed above, Plaintiff alleges that she read the following statement on Apple's website: "iOS 4 is highly secure from the moment you turn on your iPhone. All apps run in a safe environment, so a website or app can't access data from other apps." SAC ¶ 61. Plaintiff also alleges that she relied on that statement in making her purchasing decision. She alleges that "apps were an essential part of the device" in her judgment, and that if she knew that the apps were potentially insecure, "she would not have downloaded the apps and would not have paid as much for the iPhone." Id. ¶ 84. Because Plaintiff alleges that the alleged misrepresentations led her to purchase an iPhone, she adequately alleges a causal connection between Apple's misrepresentation and Plaintiff's economic injury.

Apple also argues that Plaintiff's "failure to disclose" claims are barred as a matter of law, likely because Plaintiff herself sometimes refers to her claims as based on a "failure to disclose."

See, e.g., Opp. p. 13:8. But Plaintiff's Second Amended Complaint does not allege that Apple had a duty to disclose a material fact that it breached, because Plaintiff does not hang her claims on Apple's silence; she bases each of her claims on Apple's decision to speak in an allegedly misleading manner. Apple's authorities concerning pure "failure to disclose" claims are therefore inapposite. Plaintiff's claims can be characterized as fraudulent omission claims only with respect to the affirmative statements that form the basis of those claims, and, as discussed above she has adequately pleaded them.

### ii. UCL 'Unfair' Prong

The term "unfair" as it is used in the UCL context has been defined in numerous ways, none of which has yet been adopted as controlling by the California Supreme Court or the Ninth Circuit in the context of consumer fraud.[4]

California courts have defined "unfair" business practice as: (1) a practice that offends established public policy, or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1473 (Cal. App. 2006); (2) a practice the utility of which is outweighed by the gravity of the harm to the victim, South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal.App.4th 861, 886–87 (Cal. 1999); and, borrowing from section 5 of the Federal Trade Commission Act, as a practice that is (i) substantially injurious to the consumer, where (ii) the injury is not outweighed by countervailing benefits to consumers or competition, and (iii) the injury is not one that consumers themselves could reasonably have avoided, Camacho v. Automobile Club of Southern California, 142 Cal. App. 4th 1394, 1403 (Cal. Ct. App. 2006) (citing 15 U.S.C. § 45).

In the most detailed treatment of these varying definitions, the California Supreme Court held that the first two are insufficient, at least in the antitrust context, because the "definitions are too amorphous and provide too little guidance to courts and businesses." Cel-Tech, 20 Cal. 4th at

---

[4] Plaintiff asserts a single UCL cause of action, and Apple argues that Plaintiff cannot establish the elements of any prong under the UCL. As discussed above, the Court rejects that argument with respect to the fraudulent prong, and therefore the UCL claim will survive this motion. Thus, it is not clear that the Court needs to address the unfair and unlawful prongs at all. Nonetheless, the Court does so, because of the potential for these issues to recur in the litigation.

185. And, although the third definition, *supra*, may provide the most accurate guidance for courts and businesses, the test borrows from the Federal Trade Commission Act, which specifically regulates anti-competitive conduct rather than consumer fraud. Id. The Ninth Circuit has consequently declined to apply this "unfairness" test until the California Supreme Court clarifies the issue in the consumer fraud context. Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007) ("In the absence of further clarification by the California Supreme Court, we endorse the district court's approach to the law as if it still contained [the] balancing test [set forth in South Bay].")

Taking its guidance from Lozano, this Court finds that Plaintiff has met her burden under the balancing test set forth in South Bay:

> The test of whether a business practice is unfair 'involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . .

South Bay, 72 Cal.App.4th at 886 (quoting State Farm Fire & Cas. Co. v. Superior Court, 45 Cal. App. 4th 1093, 1103-04 (1996) (ellipsis in original). As set forth above, Plaintiff has adequately pleaded the harm to her from Apple's alleged conduct; for its part, Apple offers nothing in the way of "reasons, justifications, or motives," or "utility of [its] conduct," to weigh against the alleged harm. Thus, "the Court cannot say that Apple's practices are not injurious to consumers, or that any benefit to consumers outweighs the harm." In re iPhone Application Litig., 844 F. Supp. 2d at 1073.

### iii. UCL "Unlawful" Prong

The unlawful prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." Cel-Tech, 20 Cal. 4th at 180 (quotation omitted). Thus, the UCL authorizes injured consumers to "borrow" violations of other laws for purposes of establishing UCL liability. Id. Accordingly, to the extent Plaintiff's FAL and CLRA claims survive, Plaintiff's "unlawful" UCL claim does, too.

1 **D.  Violations of False and Misleading Advertising Law, Cal. Bus. & Prof. Code §**
2 **17500,** *et seq.*

3 To state a claim under the FAL, Plaintiff must plead, with particularity, conduct that constitutes "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. In addition, a FAL claim is stated only if the plaintiff also shows that a reasonable person is likely to be deceived by the allegedly false advertisement. Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008).

In cases where fraud is not a necessary element of a claim, "a plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be grounded in fraud or to sound in fraud, and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103–04 (9th Cir. 2003).

Apple allegedly advertised that its products were secure, and assured consumers that it acts as a gatekeeper for, and closely monitors the apps available in the App Store. SAC ¶ 106. Apple's arguments for dismissing the FAL claim are identical to its arguments for dismissing the UCL claim: that Plaintiff has not identified (a) a fraudulent statement (b) on which she relied. As discussed above, the Second Amended Complaint identifies a page on Apple's website stating that the "iOS 4 is highly secure from the moment you turn on your iPhone. All apps run in a safe environment, so a website or app can't access data from other apps." SAC ¶ 61. Apple does not contend that this statement is not an advertisement. Plaintiff also alleges that she "based her decisions to purchase the Apple Device and/or purchase apps through the App Store in substantial part on Apple's misrepresentations," and thus has alleged reliance on the false advertisement. Id. Thus, for the same reasons that Apple's motion to dismiss the UCL claim must be denied, Apple's Motion to Dismiss the FAL claim must also be denied.

**E.  Violations of the Consumer Legal Remedies Act, Cal. Civ. Code §1750,**
*et seq.*

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. An action may be brought under the CLRA pursuant to §

1780(a), which provides that "[any] consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against such person." Cal. Civ. Code § 1780(a). The statute includes a course of conduct, *inter alia*, that prohibits "[r]epresenting that goods or services have . . . characteristics, . . . benefits, or quantities which they do not have," or "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Cal. Civ. Code § 1770(a)(5), 1770(a)(7). Like the UCL and FAL claims, if a claim is grounded in a fraudulent course of conduct "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." Vess, 317 F.3d 1103–04.

The Court previously dismissed Plaintiff's CLRA claim because she failed to allege unfair acts or deceptive acts or practices in a transaction for the sale of goods or services. Now, Plaintiff has alleged that "Apple's representations that its goods were of a particular standard, quality, and grade" have caused her monetary damages because she "would not have purchased the Apple Devices and/or would not have paid as much for them if Apple disclosed that the above representations were false." SAC ¶¶ 115, 118. Apple argues that because Plaintiff's claims concern the quality of third-party apps, acquired for free through the App Store, Plaintiff has not stated a claim for a misrepresented good or service. In particular, Apple argues that Plaintiff's claims "in no way concern the qualities of any Apple device (and indeed, such apps may be used on any number of different devices, so long as the devices support the requisite version of iOS, Apple's mobile operating system software)." Mot. pp. 19–20. Consequently, argues Apple, Plaintiff is not a "customer" under the statute. That argument is too clever by half.

For purposes of the CLRA, "consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). Plaintiff's overpayment claim relates to the purchase of her iPhone: an iPhone is a good; she bought it from Apple; she is a consumer. That her complaint stems from how the device functions does not change this basic conclusion.

Apple relies, in part, on a decision dismissing similar claims related to the collection of geographic data. In re iPhone Application Litig., No. 11-md-02250-LHK, 2011 WL 4403963, at

1  *10 (N.D. Cal. Sept. 20, 2011). There, the plaintiffs had failed adequately to allege damage.
2  Once those plaintiffs amended their complaint, Judge Koh held that overpayment claims related to
3  the functioning of iPhone software adequately stated a claim under the CLRA. In re iPhone
4  Application Litig., 844 F. Supp. 2d at 1071. The allegations here are nearly identical.
5      Apple's Motion to Dismiss Plaintiff's CLRA claim is denied.

### F. Negligent Misrepresentation

Under California law, the elements of negligent misrepresentation are (1) misrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and (2) with intent to induce another's reliance on the fact misrepresented; (3) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and (4) resulting damage. Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices, 207 Cal. App. 3d 1277, 1285, 255 (Cal. Ct. App. 1989). In addition, courts have recognized that "[n]egligent misrepresentation is narrower than fraud," thus requiring satisfaction with the particularity requirement of Rule 9(b). Shamsian v. Atl. Richfield Co., 107 Cal. App. 4th 967, 984 (Cal. Ct. App. 2003).

Apple's arguments for dismissing Plaintiff's negligent misrepresentation claim are identical to its arguments for dismissing the UCL, FAL, and CLRA claims. The Court rejects them for the same reason: Plaintiff has identified a misrepresentation upon which she relied in buying her iPhone. She has adequately alleged negligent misrepresentation such that Apple is on notice of the conduct that Plaintiff alleges falsely induced her to purchase. Apples' Motion to Dismiss Plaintiff's claim for negligent misrepresentation is denied.

### G. Unjust Enrichment

Apple is correct that in California "[t]here is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust." Myers-Armstrong v. Actavis Totowa, LLC, 382 Fed. Appx. 545, 548 (9th Cir. 2010)(citing McKell v. Washington Mut., Inc.,142 Cal.App.4th 1457, 1489, 49 Cal.Rptr.3d 227, 254(2006). See also Hill v. Roll Intl. Corp, 195 Cal. App. 4th 1295, 1307, 128 Cal.Rptr.3d 109 (2011). Additionally, restitution is already a remedy for Pirozzi's claims under the UCL. See

In re Tobacco II Cases, 46 Cal.4th 298, 313, 93 Cal.Rptr.3d 559, 570 (2009).  Because plaintiffs cannot cure this defect by amendment, that claim is dismissed without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the court hereby GRANTS IN PART AND DENIES IN PART Apple's Motion to Dismiss Plaintiff's Second Amended Complaint.  Plaintiff's unjust enrichment claim is hereby DISMISSED WITHOUT LEAVE TO AMEND.  Apple's Motion to Dismiss is DENIED on all other grounds.

**IT IS SO ORDERED**

Dated:  August 3, 2013

_____
JON S. TIGAR
United States District Judge